# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

December 30, 2013

Lyle W. Cayce
Clerk

No. 13-40147

DISTRIBUIDORA MARI JOSE, S.A. DE C.V.,

Plaintiff-Appellee,

v.

TRANSMARITIME, INC.,

Defendant-Appellant.

Appeals from the United States District Court
for the Southern District of Texas

Before DAVIS, GARZA, and DENNIS, Circuit Judges.

W. EUGENE DAVIS, Circuit Judge.

Defendant, Transmaritime, Inc. ("Transmaritime"), appeals from the district court's grant of summary judgment in favor of Plaintiff, Distribuidora Mari Jose, S.A. de C.V. ("Mari Jose"). Mari Jose sued for the loss of its goods in transit under the Carmack Amendment to the Interstate Commerce Act, 49 U.S.C. § 14706. For the reasons set forth below, we reverse.

I.

This case involves the apparent disappearance of nearly 2,000 boxes of Christmas lights while in transit from China to Mexico. Mari Jose is a Mexican corporation engaged in the import and export business. Transmaritime is a

No. 13-40147

logistics company that provides services related to the shipping and distribution of cargo.

In October 2008, Mari Jose purchased 11,490 boxes of Christmas lights from a Chinese manufacturer to be shipped via ocean freighter to Lazaro Cardenas, a port city on the western coast of Mexico. Mari Jose originally planned to transport the lights into the interior of Mexico from the port at Lazaro Cardenas. However, after the lights arrived at the port, it was unable to do so. As a result, the lights were held in a bonded warehouse in Lazaro Cardenas while Mari Jose considered alternative options to transport the lights to their final destination in Mexico. Eventually, Mari Jose chose to ship the lights by sea from Lazaro Cardenas to Long Beach, California, and then by automobile to Laredo, Texas. From Laredo, the lights would be imported into Mexico by truck. Mari Jose then shipped the lights from Lazaro Cardenas to Long Beach via a vessel owned and operated by Compañia Chilena de Navegacion Interoccania S.A. ("Chilena"). Mari Jose hired Transmaritime to receive the lights at the port in Long Beach and transport them "in bond" to Laredo, and then, finally, into Mexico.[1]

On December 22, 2008, Chilena issued bills of lading for the shipment of all 11,490 boxes of Christmas lights in fifteen ocean containers to Long Beach, to terminate upon delivery to the consignee. The bills name Transmaritime as consignee for the shipment. The lights arrived in Long Beach on January 10, 2009, where they were held in the custody of United States Customs and Border Protection ("Customs"). In order to secure the release of the lights from

---

[1] "Bonded goods . . . are goods that come into port in this country only to be shipped elsewhere, rather than being distributed or consumed in the United States." *United States v. Lichtenstein,*, 610 F.2d 1272, 1275 n.1 (5th Cir. 1980)

2

No. 13-40147

Customs, Transmaritime submitted several copies of Customs Form 7512 ("Form 7512"), which included a description of the cargo to be released. It did not issue its own bills of lading. Transmaritime submitted the Form 7512s to Customs on January 13, 2009, indicating it would receive a total of 11,490 boxes of Christmas lights.

After Customs released the lights, a company hired by Transmaritime transferred fifteen ocean freight containers packed with the lights from the port facility in Long Beach to a container freight station. The containers arrived at the freight station on January 20 and 21, 2009—eight days after submitting the Form 7512s. Upon reaching the freight station, the containers were unsealed, inventoried, loaded, and resealed for truck transport to Laredo. After the boxes were inventoried, Transmaritime discovered a discrepancy between the number of boxes listed on Chilena's ocean bill of lading (11,490), and the actual number of boxes it counted in the fifteen containers at the freight station (9,578). A total of 1,912 boxes were missing.

Transmaritime took two courses of action upon discovering the shortage. First, it continued the shipment of the lights to Laredo by engaging several motor carriers, each of which issued separate bills of lading that reflected, in total, the reduced number of boxes (9,578). It did not notify Mari Jose of the shortage at this time. Second, Transmaritime filed a Manifest Discrepancy Report ("MDR") with Customs, which is required for any discrepancy on bonded merchandise arriving in the United States. [2] Customs allowed

---

[2] The purpose of an MDR is to advise Customs that a bonded shipment has a discrepancy so that Customs can begin an investigation to determine who bears responsibility for the discrepancy and whether a penalty should be assessed against the responsible party.

3

No. 13-40147

Transmaritime to amend its Form 7512s to reflect the lower number of boxes without imposing a penalty. The lights began to arrive at Transmaritime's facility in Laredo on January 22, 2009, and the shortage was confirmed. Mari Jose was notified of the shortage in early February. From April 3–8, 2009, the lights were finally released from Transmaritime's facility in Laredo.

On December 2, 2010, Mari Jose filed suit against Transmaritime for the loss of the 1,912 boxes of Christmas lights. Mari Jose subsequently filed a motion for summary judgment on its claim against Transmaritime under the Carmack Amendment, which the district court granted on October 3, 2012. Transmaritime appeals.

## II.

The district court possessed subject matter jurisdiction under 28 U.S.C. § 1331, and we have jurisdiction over this timely appeal under 28 U.S.C. § 1291.

## III.

"We review de novo a district court's grant of summary judgment, applying the same standard as the district court."[3] Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[4] "If the moving party meets the initial burden of showing there is no genuine issue of material fact, the burden shifts to the nonmoving party to produce evidence or designate specific facts showing the

---

[3] *Gowesky v. Singing River Hosp. Systems*, 321 F.3d 503, 507 (5th Cir. 2003) (internal citations omitted).

[4] FED. R. CIV. P. 56(c).

No. 13-40147

existence of a genuine issue for trial."[5] A court must consider the evidence in the light most favorable to the non-movant,[6] and any reasonable inferences are to be drawn in favor of that party.[7]

IV.

The Carmack Amendment establishes the standard for imposing liability on a motor carrier for the actual loss or injury to property transported through interstate commerce.[8] Generally, the Carmack Amendment preempts state law claims arising out of the shipment of goods by interstate carriers.[9] The purpose of the Amendment is to "establish a uniform federal guidelines designed in part to remove the uncertainty surrounding a carrier's liability when damage occurs to a shipper's interstate shipment."[10] In addition, the Amendment "relieves[s] shippers of the burden of searching out a particular negligent carrier from among the often numerous carriers handling an interstate shipment of goods."[11] It does this by structuring liability like a strict liability claim, "allowing a shipper to collect from a carrier regardless of fault."[12]

To recover under the Carmack Amendment, "a shipper must establish a *prima facie* case of negligence by demonstrating (1) the delivery of goods in

---

[5] *Allen v. Rapides Parish Sch. Bd.*, 204 F.3d 619, 621 (5th Cir. 2000).

[6] *Caboni v. General Motors Corporation*, 278 F.3d 448, 451 (5th Cir. 2002).

[7] *Evans v. City of Bishop*, 238 F.3d 586, 589 (5th Cir. 2000) (internal citations omitted).

[8] *See* 49 U.S.C. § 14706(a)(1).

[9] *Accura Systems, Inc. v. Watkins Motor Lines, Inc.*, 98 F.3d 874, 876 (5th Cir. 1996).

[10] *Hughes v. United Van Lines, Inc.*, 829 F.2d 1407, 1415 (7th Cir. 1987).

[11] *Reider v. Thompson*, 339 U.S. 113, 119 (1950).

[12] *See Sompo Japan Ins. Co. of Am. v. Union Pac. R. Co.*, 456 F.3d 54, 59 (2d Cir. 2006); *Rankin v. Allstate Ins. Co.*, 336 F.3d 8, 9 (1st Cir. 2003).

good condition to the carrier; (2) receipt by the shipper of less goods or damaged goods; and (3) the amount of damages."[13] If the shipper establishes a *prima facie* case, there is a rebuttable presumption of negligence.[14] In order to overcome this presumption, a carrier must show that it was free of negligence *and* that the damage was due to a) the inherent nature of the goods, or b) attributable to an act of God, public enemy, the shipper, or public authority.[15] Finally, "failure to issue a receipt or bill of lading does not affect the liability of a carrier."[16]

Transmaritime argues that the district court erred when it granted summary judgment because Mari Jose failed to establish a *prima facie* case under the Carmack Amendment. Specifically, Transmaritime contends that Mari Jose failed to prove the first element of its Carmack claim, delivery of the goods in good condition. According to Transmaritime, there is insufficient evidence in the record to establish that it received all 11,490 boxes of Christmas lights at the port in Long Beach.

The district court found that the Form 7512s provided some evidence that Transmaritime received the 11,490 boxes of Christmas lights. The district court also noted that the eight-day delay between when Transmaritime took possession of the cargo from Customs and when it conducted an inventory indicated the loss occurred while the lights were in Transmaritime's custody. The district court relied on our opinion in *Accura Systems, Inc. v. Watkins*

---

[13] *Man Roland, Inc. v. Kreitz Motor Exp., Inc.*, 438 F.3d 476, 479 (5th Cir. 2006) (internal citations omitted).

[14] *Id.*

[15] *Id.* (citing *Mo. Pac. R.R. v. Elmore & Stahl*, 377 U.S. 134, 137 (1964).

[16] 49 U.S.C. § 14706(a)(1).

No. 13-40147

*Motor Lines, Inc.*,[17] for the proposition that the Form 7512s, combined with the bills of lading originally issued by Chilena, a declaration by Mari Jose's sole director that it had purchased 11,490 boxes of lights, and the eight-day delay, provided *prima facie* proof of delivery of the full amount of boxes. For reasons that follow, we disagree.

In *Accura Systems,* this court found that delivery under a bill of lading with an "apparent good order" clause was not, in itself, sufficient proof of delivery in good condition.[18] The court applied the rule that "a bill of lading is *prima facie* evidence of delivery in good condition, but that a bill of lading with 'an apparent good order' clause is evidence 'only as to those portions of the shipment which are visible and open to inspection.'"[19] As for the remaining portions of the shipment which were not visible or open for inspection, the plaintiff was required to provide "adequate proof" of delivery in good order,[20] or proof "by a preponderance of the evidence" of such delivery.[21] The court in *Accura Systems* found that the plaintiff had submitted enough additional evidence to carry this burden, including the testimony of two witnesses as to the condition of the cargo at shipment, and evidence of the condition of the cargo at delivery.[22] Likewise, in *Spartus Corp. v. S/S/ Yafo,* the court held the shipper would have to present "proof from elsewhere" of delivery in good condition since the cargo at issue was sealed and not available for inspection

---

[17] 98 F.3d 874 (5th Cir. 1996).

[18] *Id.* at 878.

[19] *Id.* (citing *Spartus Corp. v. S/S Yafo*, 590 F.2d 1310, 1319 (5th Cir. 1979)).

[20] *Id.* (citing *Frosty Lands Foods Int'l, Inc. v. Refrigerated Transp. Co., Inc.*, 613 F.2d 1344 (5th Cir. 1980)).

[21] *Id.* (citing *Spartus*, 590 F.2d at 1319).

[22] *Id.* at 878–80.

7

upon delivery to the carrier.[23]

In the instant case, Transmaritime did not issue a bill of lading covering the shipment to or from Long Beach.[24] The only evidence in the record as to the number of boxes received by Transmaritime at the port in Long Beach is the two Form 7512s. We find several reasons why these forms alone do not carry the same weight as a bill of lading, and are insufficient to show delivery of the goods in good condition to the carrier. First, the number of boxes listed in the Form 7512s submitted by Transmaritime was based solely on Chilena's ocean bill of lading which was the only information Transmaritime had on the quantity of Christmas lights. Second, Transmaritime did not have the opportunity to inspect or inventory the goods prior to completing the Form 7512s. In fact, fourteen of the fifteen containers received by Transmaritime had seals intact and unbroken at the time they were received, and were thus impossible to inspect prior to arrival at the container freight station.

Furthermore, even if we assume *arguendo* that the Form 7512s carry the same weight as bills of lading, caselaw demonstrates that, because the forms had an "apparent good order" clause, such bills would likely be *prima facie* proof of delivery in good condition only as to those portions of the cargo which were open for inspection at the time of delivery to Transmaritime. Additional evidence is necessary to establish that delivery in good condition occurred for the remaining portions of the shipment. As noted above, only one of the

---

[23] *See* 590 F.2d at 1319. ("In this case, the container was sealed and the clock movements were not available to L&N for inspection. Consequently, the 'apparent good condition' clause provided Zim with no proof that the clock movements had been delivered to the L&N in good condition. That proof had to come from elsewhere; and, as the district court correctly observed, Zim did not provide it.")

[24] Instead, the individual shippers subcontracted by Transmaritime issued their own bills of lading to send the cargo from California to Laredo, Texas.

containers arrived at the freight station with its seal broken. Transmaritime claims this was the result of a "spot check" of the cargo performed by U.S. Customs (although there is no evidence in the record to directly support this point). The district court found that this fact left open the possibility that the cargo inside had been lost while in the custody of Transmaritime (or one of its subcontracted carriers). The district court concluded that Transmaritime's failure to rebut this possible explanation for the loss of lights carried the day for Mari Jose in its motion for summary judgment. However, such a conclusion ignores the fact that the inventory conducted by Transmaritime showed a discrepancy of boxes of Christmas lights in at least four of the fifteen containers, not just one. This leaves the loss of lights from multiple sealed containers unexplained.

For the reasons stated above, we find a genuine issue of material fact exists as to whether a total of 11,490 boxes of Christmas lights were delivered to Transmaritime at the port in Long Beach. Thus, Mari Jose has failed to establish, at the summary judgment stage, the first element of its *prima facie* case under the Carmack Amendment: delivery of the goods in good condition to the carrier. Consequently, the district court erred in granting summary judgment in favor of Mari Jose.

## V.

For the above the reasons, we reverse and remand this case to the district court for further proceedings consistent with this opinion.