Diana Saldaña, United States District Judge
Plaintiff, a Nebraska-based transportation company, alleges that nearly $600,000 worth of tequila was stolen from seven of its tractor-trailers over a several-month period in 2013. (Dkt. 1 at 6-7.) In its complaint, Plaintiff contends that it hired Defendants, a collection of Mexican transportation *547 companies,[1] to drive the tequila in Plaintiff's trailers from Nuevo Laredo, Mexico to Laredo, Texas. (Id. at 6.) Plaintiff's complaint alleges further that Defendants are liable for the thefts because the tequila was stolen while in their possession. (Id. at 6-7.)
Plaintiff raises four claims in its complaint: (1) a conversion claim, (2) a conspiracy-to-commit-conversion claim, (3) a breach-of-contract claim, and (4) a racketeering claim. (Id. at 7-12.) Plaintiff asserted its conversion claim against Defendants Picus, Indiana Transport, and Autotransportes. (Id. at 9.) It asserted its conspiracy-to-commit-conversion claim against all defendants. (Id. at 9-10.) And it asserted its breach-of-contract claim against Picus only. (Id. at 7-8.) Its racketeering claim has already been dismissed. (Dkt. 56.)
Now before the Court are five summary-judgment motions-two filed by Picus (Dkts. 108, 109), one by Indiana Transport (Dkt. 110), one by Autotransportes (Dkt. 111), and one by Plaintiff (Dkt. 126). Picus, Indiana Transport, and Autotransportes each filed summary-judgment motions addressing Plaintiff's conversion and conspiracy-to-commit-conversion claims together. Additionally, Picus and Plaintiff filed cross-motions exclusively addressing Plaintiff's breach-of-contract claim.
Plaintiff offers no substantive response to the arguments in the summary-judgment motions challenging its conversion and conspiracy-to-commit-conversion claims. Instead, Plaintiff states that it "formally withdraws" both of those claims. (Dkt. 115 at 1.)
But Plaintiff continues to press its breach-of-contract claim against Picus. Plaintiff argues that because the tequila was stolen while its trailers were in Picus's possession, Picus breached a document known as the "Interchange Agreement"-a 2005 contract governing the interchange of trailers between Picus and Plaintiff. (Dkt. 1 at 4, 7-8; Dkt. 108 at 2.) Plaintiff contends that Picus breached that contract in three ways: by (1) failing to operate Plaintiff's trailers with "due care and diligence so as to prevent ... theft" (Dkt. 1 at 8; Dkt. 108 at 38); (2) failing to indemnify Plaintiff for the stolen tequila (Dkt. 1 at 8; Dkt. 126 at 32); and (3) failing to maintain general liability insurance covering the tequila's theft (Dkt. 1 at 8; Dkt. 126 at 33).
Although Plaintiff and Picus disagree on much of the facts, they do agree that Transportes Innovativos, S.A. de C.V. ("Transportes"), another Mexican transportation company not involved in this lawsuit, first drove the tequila in Plaintiff's trailers from Jalisco, Mexico to a Picus-owned transportation facility in Nuevo Laredo. (Dkt. 108 at 3; Dkt. 114 at 2, 27-28.) But Plaintiff and Picus disagree about what happened next. Plaintiff contends that after Transportes delivered the tequila to Picus's facility in Nuevo Laredo, Picus took possession of the trailers and drove them across the border to Plaintiff's terminal in Laredo. (Dkt. 114 at 2-3.) According to Plaintiff, the tequila was stolen sometime after Picus crossed the border but before it delivered the trailers to Plaintiff. (See Dkt. 126 at 2.) Picus disagrees. It argues that Plaintiff lacks sufficient evidence to show that Picus ever possessed the tequila-laden trailers at all. (Dkt. 108 at 13; Dkt. 129 at 11-12.) Instead, Picus contends that one of the other *548 transportation companies that operates out of its Nuevo Laredo facility drove the trailers across the border to Plaintiff's Laredo terminal and that the tequila was stolen while in that company's possession. (Dkt. 108 at 3, 13; Dkt. 129 at 11-12.)
Picus now argues that it is entitled to summary judgment on Plaintiff's breach-of-contract claim for three reasons: (1) the Interchange Agreement does not apply to the tequila shipments at issue in this case; (2) even if the Interchange Agreement did apply, Plaintiff also breached it and therefore cannot recover under it; and (3) Picus never possessed Plaintiff's trailers in the first place. Conversely, Plaintiff contends that it is entitled to summary judgment on its breach-of-contract claim because the undisputed facts show that the Interchange Agreement does apply to this case and that Picus breached it. Plaintiff argues further that Picus breached the agreement whether Picus transported the tequila across the border itself or hired another transportation company to perform that service.
Having carefully considered the papers submitted and for the reasons discussed below, the Court grants summary judgment in favor of Defendants on all of Plaintiff's remaining claims. With regard to Plaintiff's breach-of-contract claim, the Court concludes that the Interchange Agreement does not apply to the tequila shipments at issue in this case. Thus, the Court need not address whether either party fulfilled its obligations under the agreement or whether Plaintiff set forth sufficient evidence to show that Picus possessed the tequila-laden trailers in the first place.
Discussion
A. Summary Judgment Standard
Summary judgment is proper if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if its resolution in favor of one party might affect the lawsuit's outcome. Sossamon v. Lone Star State of Tex. , 560 F.3d 316, 326 (5th Cir. 2009). A dispute as to a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Seacor Holdings, Inc. v. Commonwealth Ins. Co. , 635 F.3d 675, 680 (5th Cir. 2011) (citing Anderson v. Liberty Lobby, Inc. , 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) ). In determining whether there is a genuine dispute of material fact, a court must consider the evidence in the light most favorable to the nonmovant, making all reasonable inferences in the nonmovant's favor. Distribuidora Mari Jose, S.A. de C.V. v. Transmaritime, Inc. , 738 F.3d 703, 706 (5th Cir. 2013).
The movant may satisfy its initial burden by merely showing that there is an absence of evidence to support the nonmovant's case. Celotex Corp. v. Catrett , 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The burden then shifts to the nonmovant to show the existence of a genuine fact issue for trial. Lincoln Gen. Ins. Co. v. Reyna , 401 F.3d 347, 349 (5th Cir. 2005) (citing Celotex , 477 U.S. at 321-25, 106 S.Ct. 2548 ). In doing so, the nonmovant must go beyond the pleadings and identify specific evidence in the record supporting its position. Littlefield v. Forney Indep. Sch. Dist. , 268 F.3d 275, 282 (5th Cir. 2001). It cannot preclude summary judgment by merely raising "some metaphysical doubt as to the material facts, conclusory allegations, unsubstantiated assertions, or ... only a scintilla of evidence." Avina v. JP Morgan Chase Bank, N.A. , 413 F. App'x 764, 767 (5th Cir. 2011) (per curiam) (quoting Little v. Liquid Air Corp. , 37 F.3d 1069, 1075 (5th Cir. 1994) ).
*549 B. Analysis
1. Conversion and Conspiracy to Commit Conversion (All Defendants)
In its response to Defendants' summary-judgment motions, Plaintiff "formally withdr[ew]" its claims for conversion and conspiracy to commit conversion.[2] (Dkt. 115 at 1.) Accordingly, the Court will grant Defendants' motions as to those two claims and dismiss both claims with prejudice.[3] See Lea v. Wyeth LLC , 2011 WL 13192701, at *18 (E.D. Tex. Oct. 28, 2011) (dismissing the plaintiff's express-warranty claim because she withdrew that claim in response to a summary-judgment motion); Bakhico Co. v. Shasta Beverages, Inc. , 1998 WL 25572, at *8, *13 (N.D. Tex. Jan. 15, 1998) (dismissing several claims with prejudice after the plaintiff withdrew those claims in response to a summary-judgment motion).
2. Breach of Contract (Picus Only)
Picus's central argument in support of its summary-judgment motion challenging Plaintiff's breach-of-contract claim is that the Interchange Agreement does not apply to the tequila shipments at issue in this case. (Dkt. 108 at 10.) Specifically, Picus argues that the Interchange Agreement is inapplicable here because the shipments were outside the contract's scope. (Id. at 14-15.) Thus, in Picus's view, its obligations under the contract were never triggered. (Id. at 15.) For the reasons discussed below, the Court agrees.
Under Texas law, the interpretation of an unambiguous contract is a question of law for the court to decide. ACE Am. Ins. Co. v. Freeport Welding & Fabricating, Inc. , 699 F.3d 832, 842 (5th Cir. 2012). A contract is not ambiguous if its terms can be given "a definite or certain legal meaning" even if the parties to an agreement "proffer conflicting interpretations of a term." Id. A court's primary concern in construing a written contract is to ascertain the true intent of the parties as expressed in the instrument. Id. Courts should also "examine and consider the entire writing in an effort to harmonize and give effect to all the provisions of the contract so that none will be rendered meaningless."[4]
*550 Hometown 2006-1 1925 Valley View, L.L.C. v. Prime Income Asset Mgmt., L.L.C. , 847 F.3d 302, 309 (5th Cir. 2017).
Paragraph three of the Interchange Agreement's "Basic Principles and Premises" section sets forth, in detail, the specific trailer-interchange procedure governed by the contract. That paragraph states:
[Picus] will pick up the Trailers at the below-named Point(s) of Interchange located on the U.S./Mexico border and proceed directly to the indicated Mexican point for the delivery of the freight or loading of freight. Thereafter, [Picus] will immediately return the Trailers to [Plaintiff] at the Point(s) of Interchange unless, in the case of Trailers which have just delivered freight in Mexico, [Plaintiff] has, in writing, approved the use of said Trailers to pick up loads destined for delivery in the U.S. by [Plaintiff].
(Dkt. 108 at 35.) The contract defines points of interchange as "the locations that [Plaintiff] designates in writing in Laredo, El Paso, and Brownsville, Texas and other points within the State(s) of Arizona, California and Texas, U.S.A." (Id. at 37.) In short, the Interchange Agreement applies to round-trip exchanges: when Picus (1) picks up Plaintiff's trailers-full or empty-at a designated border city in the United States, i.e., a "point of interchange"; (2) drives the trailers to a Mexican destination to unload or load cargo; and (3) drives the trailers-empty or full with new cargo-back to a point of interchange in the United States.[5]
Paragraph two of the Basic Principles and Premises section also supports the proposition that the Interchange Agreement applies only to round trips. That paragraph authorizes Picus to drive Plaintiff's trailers in four distinct scenarios:
[1] [W]hile transporting cargo therein tendered to [Picus] by [Plaintiff] for delivery in Mexico; [2] traveling empty back to the U.S./Mexico border for the purpose of returning the Trailer pursuant to [Plaintiff's] specific written authorization; [3] traveling empty pursuant to [Plaintiff's] direction to pick up cargo within Mexico which pursuant to this Agreement will be delivered to [Plaintiff] for ultimate delivery at a point within the United States or Canada; or [4] traveling loaded with such cargo back to the U.S./Mexico border for the purpose *551 of delivering [the] same to [Plaintiff] as authorized by [Plaintiff] in writing.
(Id. at 35.) These four scenarios describe two types of round-trip shipments. In the first type, Picus is authorized to (1) drive Plaintiff's trailers full with cargo for delivery in Mexico and (2) return those trailers empty to the United States. In the second type, Picus is authorized to (1) drive Plaintiff's trailers empty to Mexico to pick up cargo and (2) return those trailers full back to the United States only when loaded with that cargo.[6]
Finally, paragraph five of the Basic Principles and Premises section further expands upon the round-trip interchange procedure.[7] That paragraph states that Picus will have "reasonable free time for a complete round-trip from the Time of Interchange ... to the Time of Return." (Id. ) The "time of interchange" is defined as the moment Picus gains possession of Plaintiff's trailers at a point of interchange. (Id. at 37.) The "time of return" is defined as the moment Picus completes the round trip and returns Plaintiff's trailers to a point of interchange. (Id. )
Here, Plaintiff does not allege that Picus completed a round-trip exchange. In other words, Plaintiff does not allege that Picus drove the trailers from an American point of interchange to a Mexican destination so that Picus could pick up the tequila and drive it back to the United States. Instead, Plaintiff contends that Transportes drove the tequila-laden trailers from Jalisco to Picus's facility in Nuevo Laredo. At that point, Plaintiff asserts, Picus took possession of the trailers for the first time and drove them to Plaintiff's terminal in Laredo. Thus, the tequila shipments, as alleged by Plaintiff, are not within the Interchange Agreement's scope.
Yet Plaintiff argues that the Interchange Agreement applies to this case. In support of its position, Plaintiff relies upon five main contractual provisions. Each is discussed in turn.
First, Plaintiff points to section five of the Interchange Agreement. That section states that "[t]he physical transfer (drayage) of Trailers moving across the U.S./Mexico border shall be performed by [Picus]."[8] (Id. ) Therefore, Plaintiff argues, because Picus transferred Plaintiff's tequila-laden *552 trailers "across the U.S./Mexico border," the Interchange Agreement must apply to those shipments. (Dkt. 114 at 9-10; Dkt. 126 at 8-9.) Essentially, Plaintiff contends that section five makes the Interchange Agreement applicable to all shipments by Picus that cross the U.S.-Mexico border, irrespective of the interchange procedure involved. But Plaintiff's reading of section five conflicts with the Interchange Agreement's Basic Principles and Premises section. As explained above, the Basic Principles and Premises section dictates that the Interchange Agreement applies only to round trips-i.e., when Picus picks up Plaintiff's trailers in the United States, drives them to Mexico, and then drives them back to the United States. Section five simply adds that when Picus reaches the U.S.-Mexico border during this journey, which will inevitably happen, it is required to drive the trailers across the border itself. This does not mean, as Plaintiff contends, that the Interchange Agreement applies to shipments outside the scope of the Basic Principles and Premises section. Such a reading would render that section meaningless. Thus, section five does not make the Interchange Agreement applicable in this case.
Second, Plaintiff points to section eighteen of the Interchange Agreement, titled "Mexican-Origin Shipments." That section states, "[Picus] will work with [Plaintiff] to obtain shipments moving from Mexico to points in the U.S. which can be loaded on [Plaintiff's] Trailers and delivered by [Plaintiff] to the U.S. destination." (Dkt. 108 at 44.) According to Plaintiff, section eighteen makes the Interchange Agreement applicable here because the tequila shipments originated in Mexico and ended in the United States. (Dkt. 114 at 10-11; Dkt. 126 at 9-10.) However, section eighteen does not mean that the Interchange Agreement applies when Picus picks up Plaintiff's trailers in Mexico for the first time. Such a reading, like Plaintiff's reading of section five, would render the Basic Principles and Premises section meaningless. Instead, section eighteen is more appropriately read as applying to situations where, after driving Plaintiff's trailers from the United States to Mexico, Picus works with Plaintiff to "obtain" cargo for Picus's return trip back to the United States. This is not what happened here. Thus, section eighteen does not make the Interchange Agreement applicable in this case.
Third, Plaintiff points to a portion of the second paragraph of the Basic Principles and Premises section, which states that Picus is "authorized to retain possession and exercise control of [Plaintiff's] Trailers only while ... traveling empty ... to pick up cargo within Mexico ... or traveling loaded with such cargo back to the U.S./Mexico border." (Dkt. 108 at 35.) Plaintiff argues that the final clause of this paragraph makes the Interchange Agreement applicable here because Picus drove Plaintiff's trailers loaded with tequila back to the U.S.-Mexico border. (Dkt. 114 at 13-14; Dkt. 126 at 12-13.) But Plaintiff's reading is again unpersuasive. Like section eighteen, this portion of the Basic Principles and Premises section does not mean that the Interchange Agreement applies when Picus picks up Plaintiff's trailers in Mexico for the first time. As stated above, such a reading would render other portions of the Basic Principles and Premises section meaningless. Instead, the cited clause is best read as authorizing Picus to possess Plaintiff's trailers full with cargo during the last leg of its round-trip journey. Indeed, the clause's use of the phrase "such cargo" refers to cargo picked up in Mexico only after "traveling empty" from the United States. Here, Picus did not drive Plaintiff's trailers empty from the United States to Mexico before it gained *553 possession of the later-stolen tequila. Thus, this particular portion of the Basic Principles and Premises section does not make the Interchange Agreement applicable in this case.
Fourth, Plaintiff points to section eight of the Interchange Agreement. Section eight requires Picus to obtain all necessary permits, bonds, license plates, and insurance so that it can drive Plaintiff's trailers "within Mexico," "across the U.S./Mexico border," and "into the U.S." (Dkt. 108 at 39.) Plaintiff argues that section eight makes the Interchange Agreement applicable here because Picus drove Plaintiff's trailers within Mexico, across the border, and into the United States. (Dkt. 114 at 15-16; Dkt. 126 at 15-16.) This argument fails for the same reasons Plaintiff's other arguments have failed. The Interchange Agreement does not apply whenever Picus happens to drive Plaintiff's trailers "within Mexico," "across the U.S./Mexico border," or "into the U.S." Rather, it applies only when Picus drives Plaintiff's trailers as part of a round trip as described in the Basic Principles and Premises section. Indeed, like its other arguments, Plaintiff's proposed reading of section eight would render the Basic Principles and Premises section meaningless. Thus, section eight does not make the Interchange Agreement applicable in this case.
Lastly, Plaintiff points to the Interchange Agreement's "Declarations" section. That section states, among other things, that Picus is "authorized to pick up trailers at points along the U.S./Mexico border, including at points in the State(s) of Baja California Norte, Sonora, Chihuahua, Coahuila, Nuevo León, and Tamaulipas, Mexico, as evidenced by the permit(s) which it exhibits at the moment of celebrating this agreement." (Dkt. 108 at 34.) Plaintiff argues that this section makes the Interchange Agreement applicable here because Picus picked up Plaintiff's trailers in Nuevo Laredo, which is in Tamaulipas, before driving them across the border. (Dkt. 114 at 14; Dkt. 126 at 14-15.) Plaintiff's argument fails for two reasons.
First, the Declarations section does not make the Interchange Agreement applicable here because that section's provisions are mere recitals. A recital is a "preliminary statement in a contract ... showing the existence of particular facts." Black's Law Dictionary 1462 (10th ed. 2014). Recitals in a contract do not control the contract's operative clauses unless the operative clauses are ambiguous. Country Cmty. Timberlake Vill., L.P. v. HMW Special Util. Dist. , 438 S.W.3d 661, 669 (Tex. App.-Houston [1st Dist.] 2014, pet. denied). Moreover, when recitals and operative clauses are irreconcilable, "unambiguous operative clauses will prevail." Id.[9]
Here, the Interchange Agreement's Declarations section-which appears at the beginning of the contract separate from the contract's terms and conditions-contains nothing more than statements of fact.[10] Thus, the Declarations section contains *554 mere recitals. Further, that section conflicts with the Interchange Agreement's operative provisions. Specifically, the Declarations section appears to contemplate situations where Picus would pick up Plaintiff's trailers in Mexico. Conversely, the contract's operative provisions clearly require Picus to pick up Plaintiff's trailers at points of interchange in the United States. In light of this conflict, the Interchange Agreement's operative provisions control, and the Declarations section does not extend the contract's scope beyond round-trip shipments. Thus, because no round-trip shipments occurred here, the Declarations section does not make the Interchange Agreement applicable to this case.
Second, even if the Declarations section prevailed over the Interchange Agreement's operative provisions, Plaintiff's own rendition of the facts does not support its argument. Plaintiff argues that the Declarations section makes the contract applicable here because it authorizes Picus to "pick up" trailers in Mexico. But according to Plaintiff, Picus did not "pick up" any trailers at all. Rather, the tequila-laden trailers were delivered to Picus before Picus drove them across the border. Thus, the cited portion of the Declarations section does not apply to the facts of this case, and Plaintiff's final argument must fail for this additional reason.
In conclusion, the Interchange Agreement[11] only applies when (1) Picus retrieves Plaintiff's trailers at a point of interchange in the United States, (2) Picus drives those trailers to Mexico, and (3) Picus drives those trailers back to a point of interchange. The provisions Plaintiff cites do not make the contract applicable in any other situation. Therefore, because Picus did not ship Plaintiff's trailers as contemplated by the Interchange Agreement, that contract does not apply here and cannot form the basis for Plaintiff's breach-of-contract claim. Picus is therefore entitled to judgment as a matter of law.
Conclusion
For the foregoing reasons, Defendants' summary-judgment motions as to Plaintiff's conversion and conspiracy-to-commit-conversion claims (Dkts. 109, 110, 111) and Picus's summary-judgment motion as to Plaintiff's breach-of-contract claim (Dkt. 108) are hereby GRANTED. Plaintiff's summary-judgment motion as to its breach-of-contract claim (Dkt. 126) is hereby DENIED, and all of its remaining claims are DISMISSED with PREJUDICE. The Clerk of Court is DIRECTED to TERMINATE this case.
IT IS SO ORDERED.

The defendants in this case are Picus, S.A. de C.V. ("Picus"), Indiana Transport, S.A. de C.V. ("Indiana Transport"), Autotransportes Corporativos de Nuevo Laredo, S.A. de C.V. ("Autotransportes"), and Palos Garza. (Dkt. 1 at 1-2.) Plaintiff's complaint also named Transportes de Carga FEMA, S.A. de C.V. ("FEMA") as a defendant. (Id. at 2.) However, FEMA has since been dismissed from this case. (Dkt. 72.)

To the extent Plaintiff's response can be construed as a motion to amend its complaint, the Court notes that such an amendment would be improper at this juncture. Generally, "[a] party should not, without adequate grounds, be permitted to avoid summary judgment by the expedient of amending its complaint." Overseas Inns S.A. P.A. v. United States , 911 F.2d 1146, 1151 (5th Cir. 1990). Here, Plaintiff offers no reason why it should be permitted to amend its complaint three years after it filed this lawsuit and after Defendants have moved for summary judgment.

In response to Plaintiff's decision to withdraw its conversion and conspiracy-to-commit-conversion claims, Defendants request a final judgment under Rule 54(b) of the Federal Rules of Civil Procedure on both claims and on Plaintiff's already-dismissed racketeering claim. (Dkt. 122.) Rule 54(b) allows a district court to enter a final judgment "as to one or more, but fewer than all, claims" in a multiclaim case so that those claims may be appealed before the entire action is resolved. Fed. R. Civ. P. 54(b). Here, however, the Court need not reach Defendants' request because the Court also grants summary judgment in favor of Picus on Plaintiff's breach-of-contract claim, see infra Section 2, thereby disposing of all of Plaintiff's claims.

Although Plaintiff and Picus almost exclusively cite Texas law, the Interchange Agreement contains a Nebraska choice-of-law provision, which both parties apparently ignore. (Dkt. 108 at 45.) Nevertheless, because parties to a lawsuit "have an obligation to call the applicability of another state's law to the court's attention in time to be properly considered," Mathes v. Patterson-UTI Drilling Co. L.L.C. , 44 F.Supp.3d 691, 695 (S.D. Tex. 2014), the Court will still apply Texas law here. In any event, the Court notes that if it applied Nebraska law instead, its decision would not change. Under Nebraska law, like Texas law, the construction of a contract is a "question of law for the court." Meyers v. Frohm Holdings, Inc. , 211 Neb. 329, 318 N.W.2d 716, 719 (1982). Further, when interpreting contracts, Nebraska courts, like Texas courts, must "examine and consider the writing as a whole in an effort to harmonize and give effect to all the provisions of the contract so that none will be rendered meaningless." Coral Prod. Corp. v. Cent. Res., Inc. , 273 Neb. 379, 730 N.W.2d 357, 369 (2007).

Plaintiff argues that because the above-quoted portion of the Basic Principles and Premises section requires Picus to return Plaintiff's trailers at a point of interchange, it "logically follows that Picus would have obtained ... the trailer(s) at some other location," such as Mexico. (Dkt. 114 at 14; Dkt. 126 at 14.) Thus, Plaintiff contends, the Interchange Agreement applies here because Picus obtained the trailers in Mexico and returned them to a point of interchange in Laredo. (See Dkt. 114 at 14; Dkt. 126 at 14.) But Plaintiff evidently ignores the first sentence of the above-quoted paragraph, which requires Picus to also pick up Plaintiff's trailers at a point of interchange before driving them to Mexico. Accordingly, the requirement that Picus must return Plaintiff's trailers to a point of interchange exists not because the contract contemplates that Picus will obtain the trailers elsewhere, but because it contemplates a round trip-to and from points of interchange. No such round trip occurred here, and Plaintiff's argument therefore must fail.

The next paragraph in the Basic Principles and Premises section envisions a third type of round-trip shipment. Specifically, it authorizes Picus to (1) drive Plaintiff's trailers full with cargo for delivery in Mexico and (2) return those trailers to the United States full with new cargo that Picus picks up in Mexico on its way back. (Dkt. 108 at 35.)

Plaintiff argues that the Interchange Agreement applies in scenarios not involving round trips because the first paragraph of the Basic Principles and Premises section states that "[Plaintiff] may provide Trailers to [Picus] loaded with lading intended for a final destination within Mexico, or empty Trailers to be loaded in Mexico with lading to be delivered in the United States or Canada." (Dkt. 108 at 35; Dkt. 114 at 12-13; Dkt. 126 at 11-12) (emphasis added). In Plaintiff's view, because this sentence uses the word "may," the Interchange Agreement can apply to scenarios not explicitly contemplated by the contract. (Dkt. 114 at 12-13; Dkt. 126 at 11-12.) This argument is unavailing. The crux of the Basic Principles and Premises section is that Picus must pick up Plaintiff's trailers in the United States, drive them to Mexico, and then drive them back to the United States. The sentence Plaintiff cites does not alter this conclusion. Instead, it merely stands for the proposition that when Plaintiff gives its trailers to Picus in the United States, the trailers may be either empty or full. It does not mean that the contract applies to shipments-like the ones in this case-that fall outside the round-trip interchange procedure explicitly set forth in the contract.

Section five also states that if Picus chooses to "perform this obligation through a local drayage company," it will be responsible for that company's acts. (Dkt. 108 at 37.)

See also McKinnon v. Baker , 220 Neb. 314, 370 N.W.2d 492, 494 (1985) (explaining that "contract recitals have a limited value in the construction of a contract," and when they are inconsistent with a contract's operative clauses, the operative clauses "must control").

The Declarations section states that Plaintiff and Picus are authorized to "transport various commodities" in the United States and Mexico; that they "wish to enter into this Agreement for the transportation of shipments between points within their respective operating authorities"; that they are authorized to "enter into agreements such as the instant one"; that Picus is authorized to pick up trailers in Mexico; that Picus's "legal existence" was granted before a "notary public"; and that Picus's legal representative has power of attorney. (Dkt. 108 at 34.)

Picus attached a copy of the Interchange Agreement to its summary-judgment motion. (Dkt. 108 at 34-48.) Plaintiff objected to that exhibit, arguing that Picus had not properly authenticated it. (Dkt. 114 at 6.) Oddly enough, however, Plaintiff also attached the Interchange Agreement to its response motion. (Id. , Attach. 1 at 7-24.) It "defies logic" for Plaintiff to argue that a contract it produced is not authentic. See Musket Corp. v. Suncor Energy (U.S.A.) Mktg., Inc. , 2016 WL 6704163, at *3 (S.D. Tex. Nov. 15, 2016). Indeed, except for two additional addenda, Plaintiff's copy of the Interchange Agreement is identical to Picus's. (See Dkt. 108 at 34-48; Dkt. 114, Attach. 1 at 7-24.) Moreover, Plaintiff independently authenticated the Interchange Agreement in its response motion. (Dkt. 114, Attach. 1 at 3.) Thus, there is no concern that the Interchange Agreement is not what it purports to be. Accordingly, Plaintiff's objection is overruled.
Additionally, because the Court did not need to consider any other summary-judgment evidence to arrive at its decision, the numerous other objections raised by both parties are overruled as moot.