**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**
October 19, 2012

No. 12-20002

Lyle W. Cayce
Clerk

ACE AMERICAN INSURANCE CO.,

Plaintiff-Appellee,

v.

FREEPORT WELDING & FABRICATING, INC.,

Defendant-Appellant.

Appeal from the United States District Court for the
Southern District of Texas

Before STEWART, Chief Judge, and DeMOSS and GRAVES, Circuit Judges.

CARL E. STEWART, Chief Judge:

Freeport Welding & Fabricating, Inc. ("Freeport") and Brand Energy Solutions, L.L.C. ("Brand Energy") were named defendants in a personal injury suit in Texas state court. ACE American Insurance Company ("ACE") insures Brand Energy. Freeport sought defense and indemnity from ACE in the state court proceedings as an additional insured under Brand Energy's insurance policy with ACE. ACE denied Freeport's request, contending that it had no duty under the policy to defend or indemnify Freeport in the state court proceedings.

ACE and Freeport then filed motions in federal district court seeking summary judgment on the issue of whether ACE had a duty to defend or indemnify Freeport in the state court proceedings. The district court rendered

No. 12-20002

judgment in favor of ACE, holding that it did not have a duty to defend Freeport in the state court proceedings. The district court declined to rule on the issue of whether ACE had a duty to indemnify Freeport in the state court proceedings. Thereafter, the parties in the state court proceedings settled their claims.

For the reasons stated herein, we AFFIRM the district court's summary judgment in favor of ACE holding that it had no duty to defend Freeport in the state court proceedings. We REMAND for a determination of whether ACE has a duty to indemnify Freeport for the cost of its settlement in the state court proceedings.

## I.

Freeport, a Texas corporation, builds vessels for use in the energy industry. In 2008, Freeport began making plans to build a vessel called a quench chamber. On October 22, 2008, Freeport issued a purchase order (referred to herein as "the 2008 purchase order" or "the purchase order") to Brand Industrial, L.L.C. ("Brand Industrial"), a subsidiary of Brand Energy, for the installation of a lining called refractory for the inside of the quench chamber. The total amount of the purchase order was $456,018.

Above the signature lines on the purchase order was the following language:

> THIS ORDER INCORPORATES ALL TERMS AND CONDITIONS LISTED ON THIS ORDER; AND ACCEPTANCE OF THIS PURCHASE ORDER BY SELLER TO FURNISH MATERIALS, PRODUCTS AND/OR SERVICES CALLED FOR HEREIN CONSTITUTES ACCEPTANCE OF ALL TERMS AND CONDITIONS.

The purchase order also contained a "Comments" section which stated in pertinent part:

> INCLUDES LABOR, MATERIAL, PERSONNEL QUALIFICATION, PRODUCTION TEST & THERMAL

2

No. 12-20002

DRY-OUT. DETAILED SCOPE OF WORK AND REQUIREMENTS TO FOLLOW. WORK TO BE PERFORMED APPROX. 2ND QUARTER OF 2009.

In January 2009, prior to beginning the installation work pursuant to the 2008 purchase order, Brand Energy sent Freeport a letter stating that Brand Industrial "has turned your work over to our parent company, Brand Energy Solutions, LLC." The letter further provided an address to which Freeport was to direct future payments for "all contracts, purchase orders and bid documents." The letter was signed by Brand Energy's Director and General Manager, Lindsey M. Hebert.

Also in January 2009, Freeport and Brand Energy entered into a purchase agreement (referred to herein as the "2009 purchase agreement" or "the purchase agreement"), effective January 1, 2009 to evergreen,[1] which was to be applicable to purchase orders issued from Freeport to Brand Energy. The purchase agreement stated that "in the event" that Freeport "provides notice in writing" to Brand Energy that it is to provide goods and/or services to Freeport, then the terms of the purchase agreement, effective January 1, 2009, "shall apply."[2] The "Terms and Conditions" section located above the signature lines on the first page of the purchase agreement stated that its terms and conditions "are hereby incorporated by reference to all purchase orders issued by [Freeport] to [Brand Energy] and shall govern all such transactions."

Additionally, on the following page titled "Purchase Agreement Terms and Conditions" were the following paragraphs:

---

[1] "To evergreen" is a phrase used to describe the automatic renewal of a contract after each maturity period until one of the parties cancels.

[2] The purchase agreement also states that it is applicable to Brand Energy's subsidiaries and assigns.

3

No. 12-20002

5. INSURANCE.  Seller[3] agrees to carry the following minimum insurance which shall be primary to any insurance maintained by Buyer:[4]

Worker's Compensation, Commercial General Liability, including Completed Operations and Product Liability Insurance; Blanket Contractual, with an endorsement naming Buyer as an additional insured with minimum limits of liability of $2,000,000 each occurrence combined single limit.

Not later than (10) days from the date of this Order but in any case prior to Seller's entering Buyer's property to perform Services, a certificate evidencing the above coverage shall be provided to Buyer and said certificate shall provide that Buyer shall be given thirty (30) days advance notice in the event of cancellation or material modification of the coverage.

. . .

8. INDEMNIFICATION.  Seller shall assume the sole responsibility for any and all damage or injury (including death) to any and all persons (including, but not limited to employees of Seller or Buyer) and to all property associated with the performance of the obligations under this Order or any act or omission of Seller, and shall defend, indemnify and save harmless Buyer from and against any and all claims, liabilities, expenses (including attorneys' fees), fines, penalties, and damages except for such claims, liabilities, etc., caused by the sole negligence of Buyer.  Seller hereby releases and waives all rights of subrogation against Buyer possessed by Seller's insurers.  Seller hereby represents that it is authorized by its insurers to grant such release and waiver.

The purchase agreement was signed by Roy E. Yates, the President of Freeport, and James "Bubba" Bethea, Jr., the Branch Manager for Brand Energy.

---

[3] Brand Energy

[4] Freeport

4

No. 12-20002

Brand Energy began installation of the refractory in May 2009, and the project was completed in August 2009. On August 21, 2009, Freeport issued a partial payment to Brand Energy in the amount of $163,824.88. Then on October 14, 2009, Brand Energy sent a letter to Freeport requesting full payment of the unpaid balance, the amount of which was $368,461.09.

On May 20, 2009, several workers[5] who were installing the refractory inside the quench chamber were injured when the chamber dislodged and rolled off of its mount. The workers brought a negligence suit against Freeport, Brand Energy, and others in Texas state court to recover for bodily injuries resulting from the accident.[6] The state court plaintiffs claimed *inter alia* that Freeport was responsible for handling the quench chamber, including its stability; that Freeport originally hired Brand Industrial to install the refractory; and that Freeport failed to supervise and warn the workers of the various dangers involved in applying the refractory inside the quench chamber.

The state court plaintiffs further claimed that, although the job in question was originally taken on by Brand Industrial, Brand Energy took over the job at some point after the job began. Thus, Brand Energy was contractually and legally responsible for some of the planning and most of the execution of the job but failed to adhere to those responsibilities, and provided no oversight, supervision, or planning. The state court pleadings do not specifically mention the 2009 purchase agreement between Freeport and Brand Energy and, consequently, do not allege that the purchase agreement requires Brand Energy to provide insurance coverage to Freeport with regard to the May 20, 2009 incident.

---

[5] Antonio Hernandez, Jesus Chavez, and Jorge Garza (Plaintiffs); and Efren Rosales (Intervenor).

[6] Cause No. 52394, *Antonio Hernandez, et al. v. Freeport Welding & Fabricating, Inc., et al.*

No. 12-20002

The insurance policy between ACE and Brand Energy covers Brand Energy and its subsidiaries, including Brand Industrial, and has a policy period of September 30, 2008 through September 30, 2009. Under "Section I - Coverages" the policy states:

> We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.

This coverage provision applies to the "named insured[s]" in the policy, *i.e.*, Brand Energy and its subsidiaries, as well as to the "additional insured[s]" in the policy.

The policy contains the following three "additional insured" endorsements: (1) "Any person or organization whom you have agreed to include as an additional insured under a written contract, provided such contract was executed prior to the date of loss"; (2) "Any person or organization the insured is required by contract to provide said coverage"; and, (3) "Any Owner, Lessee or Contractor whom you have agreed to include as an additional insured under a written contract, provided such contract was executed prior to the date of loss."

On July 17, 2009, relying on the 2009 purchase agreement, counsel for Freeport tendered Freeport's defense in the state court suit to Brand Energy and requested that the tender be forwarded to Brand Energy's insurance carrier, ACE. ACE denied the tender of defense via written letters dated August 27, 2009 and April 1, 2010. ACE then filed for declaratory judgment in the federal district court seeking a ruling that it had no duty to defend or indemnify Freeport as an additional insured under Brand Energy's insurance policy.

6

No. 12-20002

Freeport filed a counter-claim against ACE seeking a declaratory judgment that it was covered as an additional insured under Brand Energy's insurance policy and therefore entitled to defense and indemnity by ACE in the state court proceedings.

The district judge rendered summary judgment in favor of ACE and against Freeport, holding that ACE did not have a duty to defend Freeport in the state court proceedings as an additional insured under Brand Energy's insurance policy. Additionally, reasoning that "the insurer's duty to indemnify cannot be determined until after the underlying suit has been resolved," *Columbia Cas. Co. v. Ga. & Fla. RailNet, Inc.*, 542 F.3d 106, 111 (5th Cir. 2008), the district judge declined to rule on whether ACE had a duty to indemnify Freeport in the state court case.

Freeport appeals the district court's summary judgment in favor of ACE holding that it did not have a duty to defend Freeport in the state court proceedings.[7] Additionally, in consideration of the settlement recently reached among the parties in the state court proceedings, Freeport now moves this court to rule on the issue of whether ACE has a duty to indemnify Freeport as an additional insured under Brand Energy's insurance policy.

## II.

## A.

---

[7] In the declaratory judgment proceedings, both ACE and Freeport filed motions to strike. The district court denied ACE's motion to strike the following: (1) the affidavit of Roy E. Yates; (2) the August 21, 2009 check from Freeport to Brand Energy; (3) the October 14, 2009 letter from Brand Energy to Freeport; (4) the depositions of Chris Roland, James "Bubba" Bethea, Jr., and Lindsay Hebert; and (5) the registration records concerning Brand Industrial. The district court denied as moot ACE's motion to strike the following: (1) the January 2009 letter from Brand Energy to Freeport; and (2) the unsigned purchase order drafted by Freeport. Additionally, the district court denied as moot Freeport's motion to strike the following: (1) ACE's argument concerning the unsigned purchase order; and (2) portions of the affidavits of Rob Englebert and Lindsey Hebert. ACE does not appeal the district court's rulings on its motion to strike. Freeport does appeal the district court's ruling on its motion to strike.

No. 12-20002

This court reviews a district court's grant of summary judgment de novo. *Nat'l Cas. Co. v. W. World Ins. Co.*, 669 F.3d 608, 612 (5th Cir. 2012). Summary judgment is appropriate when the evidence before the court shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party meets this burden, the non-moving party must then come forward and establish the specific material facts in dispute. *Matshushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). If the non-moving party is unable to identify anything in the record to support its claim, summary judgment is appropriate. *Stahl v. Novartis Pharm. Corp.*, 283 F.3d 254, 263 (5th Cir. 2002).

The interpretation of an insurance contract is also reviewed de novo. *Nat'l Cas. Co.*, 669 F.3d at 612.

**B.**

Where federal jurisdiction is based on diversity of citizenship, a federal court looks to the substantive law of the forum state. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938); *Colony Ins. Co. v. Peachtree Constr., Ltd.*, 647 F.3d 248, 252 (5th Cir. 2011). The parties do not dispute that Texas law applies in these proceedings.

"Under Texas law, an insurer may have two responsibilities relating to coverage - the duty to defend and the duty to indemnify." *Gilbane Bldg. Co. v. Admiral Ins. Co.*, 664 F.3d 589, 594 (5th Cir. 2011) (citing *D.R. Horton-Tex., Ltd. v. Markel Int'l Ins. Co.*, 300 S.W.3d 740, 743 (Tex. 2009)). The Texas Supreme Court has explained that the two duties are distinct, and they are to be decided separately. *Gilbane Bldg. Co.*, 664 F.3d at 594.

In order to decide whether there is a duty to defend under the policy, the court must first determine whether the party alleging coverage qualifies as an

additional insured under the policy. *Id.* If the party alleging coverage does qualify as an additional insured, the court must then determine whether, under Texas's eight-corners rule, the facts alleged in the underlying state court proceedings are sufficient to trigger the duty to defend under the policy. *Id.* An affirmative answer to both is required to hold that there is a duty to defend. *Id.* The party alleging coverage bears the burden on each of these issues. *Id.* (citation omitted).

Under the eight-corners rule, "[t]wo documents determine an insurer's duty to defend - the insurance policy and the third-party plaintiff's pleadings in the underlying litigation[.]" *Id.* If the underlying pleadings allege facts that may fall within the scope of coverage, the insurer has a duty to defend; if the pleading only alleges facts excluded by the policy, there is no duty to defend. *Ooida Risk Retention Group, Inc. v. Williams*, 579 F.3d 469, 472 (5th Cir. 2009) (citation omitted).

Moreover, the duty to defend does not rely on the truth or falsity of the underlying allegations; an insurer is obligated to defend the insured if the facts alleged in the petition, taken as true, potentially assert a claim for coverage under the insurance policy. *Colony Ins. Co.*, 647 F.3d at 253 (citing *GuideOne Elite Ins. Co. v. Fielder Rd. Baptist Church*, 197 S.W.3d 305, 308 (Tex. 2006)). Because the only two documents relevant to the duty-to-defend inquiry are the insurance policy and the petition, an insurer's duty to defend can be determined at the moment the petition is filed. *Id.* at 253. "Resort to evidence outside the four corners of these two documents is generally prohibited." *Id.* (citing *GuideOne Elite Ins. Co.,* 197 S.W.3d at 307).

"In performing its eight-corners review, a court may not read facts into the pleadings, look outside the pleadings, or speculate as to factual scenarios that might trigger coverage or create an ambiguity." *Gilbane Bldg. Co.*, 664 F.3d at 596-97 (citing *Nat'l Fire Ins. Co. v. Merchants Fast Motor Lines, Inc.*, 939 S.W.2d

139, 142 (Tex. 1997)). "Moreover, '[t]he Texas Supreme Court has never recognized any exception to the strict eight corners rule.'" *Id.* at 597 (citing *Northfield Ins. Co. v. Loving Home Care, Inc.*, 363 F.3d 523, 529, 531 (5th Cir. 2004)). "Although ambiguities will be resolved in favor of coverage, '[t]he fact that the parties disagree as to coverage does not create an ambiguity.'" *Id.* at 597 (citing *Valmont Energy Steel, Inc. v. Commercial Union Ins. Co.*, 359 F.3d 770, 773 (5th Cir. 2004)).

Only a few Texas appellate courts have held that the examination of extrinsic evidence was warranted under an exception to the eight-corners rule. *Ooida Risk Retention Group, Inc.*, 579 F.3d at 475 (citing *Mid-Continent Cas. Co. v. Safe Tire Disposal Corp.*, 16 S.W.3d 418, 421 (Tex. App.–Waco, 2000, *pet. denied*); *State Farm Fire & Cas. Co. v. Wade*, 827 S.W.2d 448, 452-53 (Tex. App.–Corpus Christi, 1992, *writ denied*); *Gonzales v. Am. States Ins. Co.*, 628 S.W.2d 184, 187 (Tex. App.–Corpus Christi, 1982, *no writ*)). The exception to this rule is limited to cases where "it is initially impossible to discern whether coverage is potentially implicated *and* when the extrinsic evidence goes solely to a fundamental issue of coverage which does not overlap with the merits of or engage the truth or falsity of any facts alleged in the underlying case." *Ooida Risk Retention Group, Inc.*, 579 F.3d at 475 (citation omitted).

"The duty to indemnify, on the other hand, is 'a matter dependent on the facts and circumstances of the alleged injury-causing event, [and] parties may introduce evidence during coverage litigation to establish or refute the duty to indemnify.'" *Gilbane Bldg. Co.*, 664 F.3d at 594 (quoting *D.R. Horton-Tex.*, 300 S.W.3d at 741).

*1. Freeport's Status as an Additional Insured*

This court's holding in *Gilbane* requires that our analysis begin with a determination of whether Freeport qualifies as an "additional insured" under Brand Energy's insurance policy, which includes a review of the 2009 purchase

No. 12-20002

agreement. *Gilbane Bldg. Co.*, 664 F.3d at 594. If we determine that Freeport qualifies as an additional insured during the relevant time period, our analysis will then proceed to the eight-corners rule to decide if the facts alleged in the underlying state court proceedings were sufficient to trigger ACE's duty to defend Freeport as an additional insured under Brand Energy's insurance policy. *Id.* at 594.

Freeport argues that it is an additional insured under Brand Energy's insurance policy with ACE. We agree with Freeport that it qualified as an additional insured under Brand Energy's insurance policy during the 2009 purchase agreement's term of coverage. For the following reasons, however, we do not agree with Freeport's argument that it qualified as an additional insured under Brand Energy's insurance policy with respect to the underlying state court claims.

Brand Energy's insurance policy provides coverage for Brand Energy and its subsidiaries, including Brand Industrial, and has a policy period of September 30, 2008 through September 30, 2009. The policy states under "Section I - Coverages" that "[ACE] will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies. [ACE] will have the right and duty to defend the insured against any 'suit' seeking those damages." This coverage provision applies to the Brand Energy and its subsidiaries, the named insureds under the policy, as well as to those named as additional insureds under the policy. Three "additional insured" endorsements are included in the policy: (1) "Any person or organization whom [Brand Energy has] agreed to include as an additional insured under a written contract, provided such contract was executed prior to the date of loss"; (2) "Any person or organization [Brand Energy] is required by contract to provide said coverage"; and, (3) "Any Owner, Lessee or Contractor whom [Brand Energy has] agreed to include as an

11

additional insured under a written contract, provided such contract was executed prior to the date of loss."

Consequently, in order for Freeport to qualify as an additional insured under Brand Energy's insurance policy with ACE, there must be in existence a contract wherein Brand Energy has agreed to provide insurance coverage for Freeport. The 2009 purchase agreement is such a contract. The purchase agreement between Brand Energy and Freeport, effective January 1, 2009 to evergreen, applies to purchase orders issued by Freeport to Brand Energy during the term of coverage and contains the following paragraphs on the page titled "Purchase Agreement Terms and Conditions":

> 5. INSURANCE. Seller agrees to carry the following minimum insurance which shall be primary to any insurance maintained by Buyer:
>
> Worker's Compensation, Commercial General Liability, including Completed Operations and Product Liability Insurance; Blanket Contractual, with an endorsement naming Buyer as an additional insured with minimum limits of liability of $2,000,000 each occurrence combined single limit.

A plain reading of the purchase agreement indicates that it applies to all purchase orders entered into by Brand Energy and Freeport during its term of coverage. Accordingly, we conclude that Freeport qualified as an additional insured under Brand Energy's insurance policy with ACE for all purchase orders entered into between Freeport and Brand Energy during the 2009 purchase agreement's term of coverage, *i.e.*, from January 1, 2009 through the end of the term of coverage.

Now, we consider whether Freeport is covered as an additional insured under Brand Energy's insurance policy with respect to the underlying state court claims that stemmed from the 2008 purchase order. Freeport argues that the 2009 purchase agreement is applicable to the 2008 purchase order, and thus,

Freeport qualifies as an additional insured with respect to the underlying state court claims. We do not agree.

"Under Texas law, the interpretation of an unambiguous contract is a question of law for the court to decide by 'looking at the contract as a whole in light of the circumstances present when the contract was entered.'" *Gonzalez v. Denning*, 394 F.3d 388, 392 (5th Cir. 2004) (quoting *Philadelphia Am. Life Ins. Co. v. Turner*, 131 S.W.3d 576, 587 (Tex. App.–Fort Worth, 2004)). "The primary concern of a court construing a written contract is to ascertain the true intent of the parties as expressed in the instrument." *Id*. at 392 (citing *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. CBI Indus., Inc.*, 907 S.W.2d 517, 520 (Tex. 1995)). "In construing a contract under Texas law, courts must examine and consider the entire writing and give effect to all provisions such that none are rendered meaningless." *Id*. (citing *Int'l Turbine Servs., Inc. v. VASP Brazilian Airlines*, 278 F.3d 494, 497 (5th Cir. 2002)). "The terms used in the [contract] are given their plain, ordinary meaning unless the [contract] itself shows that the parties intended the terms to have a different, technical meaning." *Id*. (citing *Am. Nat'l Gen. Ins. Co. v. Ryan*, 274 F.3d 319, 323 (5th Cir. 2001)). "To be legally binding, '[t]he parties must have a meeting of the minds, and each must communicate his consent to the terms of the agreement.'" *Crisalli v. ARX Holding Corp.*, 177 F. App'x 417, 419-20 (5th Cir. 2006) (citing *Smith v. Renz*, 840 S.W.2d 702, 704 (Tex. App.–Corpus Christi, 1992)).

"If a written contract is so worded that it can be given a definite or certain legal meaning, then it is not ambiguous." *Gonzalez*, 394 F.3d at 392 (quoting *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 907 S.W.2d at 520). "If, however, the language of the contract is subject to two or more reasonable interpretations or meanings, it is ambiguous." *Id*. at 392 (citation omitted). "A contract is not ambiguous merely because the parties to an agreement proffer conflicting interpretations of a term." *Id*. (quoting *Int'l Turbine Servs., Inc. v. VASP*

No. 12-20002

*Brazilian Airlines*, 278 F.3d 494, 497 (5th Cir. 2002)).  Under Texas law, a contract generally is construed against its drafter only as a last resort, after application of ordinary rules of construction leave reasonable doubt as to its interpretation.  *Forest Oil Corp. v. Strata Energy, Inc.*, 929 F.2d 1039, 1043-44 (5th Cir. 1991) (citation omitted).  In order to determine whether a contract has retroactive application, a court looks to the language of the contract itself.  *Gardiner, Kamya & Assocs., P.C. v. Jackson*, 467 F.3d 1348, 1353 (Fed. Cir. 2006).

The 2009 purchase agreement is not ambiguous.  It clearly defines its term of coverage as commencing on January 1, 2009 and remaining effective "to evergreen."  Accordingly, the purchase agreement applies to purchase orders entered into between the parties from January 1, 2009 forward, until one of the parties cancels the agreement.  A review of the remainder of the 2009 purchase agreement indicates that there is no provision in the agreement evidencing its retroactive application to the 2008 purchase order between Freeport and Brand Energy, nor to any other purchase order entered into between the parties prior to January 1, 2009.  Further, we are not persuaded by Freeport's argument that the 2009 purchase agreement's language that it applies to "all purchase orders" somehow evidences its application to the 2008 purchase order, or any other purchase order in existence prior to the purchase agreement's term of coverage.[8] To draw such a conclusion would render the purchase agreement's term of coverage entirely meaningless.

Furthermore, the 2008 purchase order, which clearly pre-dates the 2009 purchase agreement, makes no mention of the projected application of the 2009

---

[8] We also find unpersuasive Freeport's several arguments that general wording in the purchase agreement that does not specifically mandate its application to future purchase orders somehow renders the agreement applicable to orders in existence prior to its January 1, 2009 term of coverage.  As an example, Freeport points to wording such as "[a]s specified by buyers order" as opposed to "to be specified" or "as specified by future buyers order."

14

purchase agreement to the 2008 purchase order.  Nor does the 2008 purchase order provide for the projected application of any other type of insurance coverage to be provided by Brand Energy to Freeport.  The only language in the 2008 purchase order that could be construed as anticipating any future dealings between the parties is found in the "comments" section of the order which states "Detailed scope of work and requirements to follow.  Work to be performed approx. 2nd quarter of 2009."  This language, however, does not pertain to insurance coverage between the parties, nor does it pertain to the 2009 purchase agreement or to any other purchase agreement.  As a result, neither the terms of the 2008 purchase order, nor the terms of the 2009 purchase agreement, result in the applicability of the 2009 purchase agreement to the 2008 purchase order.

In conclusion, it is clear that the 2009 purchase agreement does not apply to the 2008 purchase order giving rise to the claims in the state court proceedings.  Accordingly, we hold that Freeport is not covered as an additional insured under Brand Energy's insurance policy with respect to the underlying state court claims arising out of the 2008 purchase order.

In light of our holding that Freeport does not qualify as an additional insured under Brand Energy's insurance policy with respect the underlying state court claims, we need not reach the second part of the analysis under *Gilbane* with respect to the eight-corners rule.  *Gilbane Bldg. Co.*, 664 F.3d at 594.  For the same reason, we also pretermit the following additional arguments submitted by Freeport: (1) that the 2008 purchase order and the 2009 purchase agreement should be read together as forming a single contract which is reasonably susceptible to the interpretation that the purchase agreement applied to both existing and future purchase orders once it was issued; (2) that the 2009 purchase agreement is not unenforceably vague when read in conjunction with the 2008 purchase order; (3) that the purchase agreement

applies to Brand Energy and its subsidiaries, including Brand Industrial; (4) that ACE's parol evidence (portions of the affidavits of Rob Englebert and Lindsey Hebert) of its intent that the 2009 purchase agreement would not apply to refractory work should not have been admitted by the district court, *i.e.*, the district court erroneously denied Freeport's motion to strike this evidence;[9] (5) that given the district court's finding that the 2009 purchase agreement was ambiguous, summary judgment was inappropriate; (6) that ACE should be precluded from arguing that the 2009 purchase agreement was not supported by consideration since it did not plead so as an affirmative defense; and further, that ACE failed to provide evidence or proof of lack of consideration;[10] and (7) Freeport's supplemental brief arguments that the law implies a mutual obligation on the part of the buyer and seller as consideration for the 2009 purchase agreement; and, alternatively, that the purchase agreement was supported by adequate consideration due to the "applicable law" provision in the agreement. Finally, because the underlying state court proceedings have been settled, we also pretermit Freeport's argument that the suit in federal court should be dismissed without prejudice pending the resolution of the state court suit.

### 2. Duty to Indemnify

Since the underlying state court proceedings remained pending when the summary judgment proceedings were held in the district court, the district judge declined to rule on the issue of whether ACE had a duty to indemnify Freeport as an additional insured under Brand Energy's insurance policy. As stated,

---

[9] Because the district court did not consider this evidence in the proceedings below, it "denied as moot" Freeport's motion to strike.

[10] This argument refers to the district court's ruling denying Freeport's motion to strike ACE's argument pertaining to this issue. Because the district court did not consider this evidence in the proceedings below, it "denied as moot" Freeport's motion to strike.

however, the parties in the state court proceedings have now reached a settlement. In light of this development, Freeport now moves this court to rule on the issue of whether ACE has a duty to indemnify Freeport.

"The duty to indemnify is separate and distinct from the duty to defend." *Gilbane Bldg. Co.*, 664 F.3d at 601 (citing *Zurich Am. Ins. v. Nokia, Inc.,* 268 S.W.3d 487, 490-91 (Tex. 2008)). "The duty to defend is circumscribed by the eight-corners doctrine; the duty to indemnify, on the other hand, is controlled by the facts that establish liability in the underlying suit." *Id.* at 601 (citing *Pine Oak Builders, Inc. v. Great Am. Lloyds Ins. Co.*, 279 S.W.3d 650, 656 (Tex. 2009)). Consequently, the insurer's duty to indemnify generally cannot be determined until the underlying suit has been resolved. *Columbia Cas. Co.,* 542 F.3d at 111 (citing *Collier v. Allstate Cnty. Mut. Ins. Co.*, 64 S.W.3d 54, 62 (Tex. App.–Fort Worth, 2001)). Since, however, the parties have now settled their claims in the underlying state court litigation, the issue of whether ACE has a duty to indemnify Freeport as an additional insured under Brand Energy's insurance policy is now ripe for consideration by the district court. Accordingly, we remand for a determination of whether ACE has a duty to indemnify Freeport for the cost of its settlement in the state court proceedings.

## III.

For the foregoing reasons, we AFFIRM the district court's summary judgment in favor of ACE holding that it had no duty to defend Freeport. We REMAND for a determination of whether or not ACE has a duty to indemnify Freeport for the cost of its settlement in the state court proceedings.