# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 14-10317

COLONY INSURANCE COMPANY,

Plaintiff - Appellee

v.

MARTY D. PRICE; MUSTANG TOWN PROPERTY, L.P.; TOM GP, L.L.C.,

Defendants - Appellants

United States Court of Appeals
Fifth Circuit

**FILED**
February 12, 2015

Lyle W. Cayce
Clerk

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:11-CV-3536

Before JOLLY, WIENER, and CLEMENT, Circuit Judges.

PER CURIAM:*

In this declaratory-judgment action, Plaintiff-Appellee Colony Insurance Co. ("Colony") seeks a ruling that it has no duty to defend Defendants-Appellees Marty D. Price, Mustang Town Property LP ("MTP"), and T.O.M. GP, LLC ("TOM") (collectively, "Price Defendants") against claims alleged against them in a state court lawsuit. The Price Defendants claim that they are entitled to a defense pursuant to a commercial general liability policy (the

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 14-10317

"Policy") issued by Colony to another defendant in the state court proceeding. The district court granted Colony's motion for summary judgment, holding that the Price Defendants are not "insureds" under the Policy. We affirm.

## I. Facts and Proceedings

### A. State Court Proceedings

This insurance dispute arises from a tragic incident occurring at a nightclub, the Wispers Cabaret, in October 2008. Fernando Ramirez, a patron of the establishment, was beaten and whipped by club personnel, then thrown outside the club and later died from his injuries. His estate and heirs subsequently brought a wrongful death suit in Texas state court (the "Ramirez suit"). The state court petition (the "Petition"), filed in August 2011, alleged various claims against a litany of defendants: Marsha McKee, individually and d/b/a Mustang Amusements, Inc.; Thomas Sinclair; Jeffrey Ballew; James Sinclair; Mustang Amusements, Inc.; Mustang Amusements, Inc. d/b/a Wispers Cabaret; and the Price Defendants.

According to the Petition, on October 1, 2008, "Ramirez was stopped from leaving the club by its employees and . . . was then falsely imprisoned in the club. At some point after being falsely imprisoned and suffering damages therefrom, he was assaulted by club employees . . . ." This assault began with an altercation between Ramirez and Ballew, "which led to the mortal injuries inflicted upon [Ramirez] by Defendant Thomas H. Sinclair."

The Petition is not entirely clear on the ownership and management structure of the Wispers Cabaret, but it appears to allege that at the time of the incident, McKee, Mustang Amusements, Thomas Sinclair, and James Sinclair operated and maintained the club. Thomas Sinclair, however, was in the process of purchasing Wispers Cabaret from the other defendants. This

2

transaction led to a lawsuit between Thomas Sinclair and McKee/Mustang Amusements, in which Thomas Sinclair apparently prevailed. Instead of taking title in his own name, however, he assigned his interest in Wispers Cabaret to MTP. According to the Petition, MTP and its general partner TOM "were not formed by Defendants James Sinclair and Marty D. Price until December 31, 2009." MTP and TOM "did not exist" at the time that Ramirez was killed. Marty Price was Thomas Sinclair's attorney, and, per the Petition, the purpose of the MTP/TOM scheme was to "defraud" the Ramirez plaintiffs by essentially hiding Thomas Sinclair's assets behind shell corporations created on his behalf.

Following these factual allegations, the Petition states a litany of claims. Read liberally, it accuses the Price Defendants of negligence, negligence *per se*, and gross negligence; false imprisonment; civil conspiracy; fraudulent transfer; and conversion. The Petition is not entirely consistent internally, but these claims appear to fall into two groups. In the first group are the negligence claims and the false imprisonment claim, which arise from the club's treatment of Ramirez in 2008.[1] In the second group are the conspiracy, fraudulent transfer, and conversion claims, which arise from the asset-hiding scheme developed in 2009 and 2010 as a response to the imminent state court litigation. The Petition does not clarify why the Price Defendants, consisting of two entities not yet in existence at the time of the 2008 incident, and Price, who allegedly was Thomas Sinclair's attorney, not his business partner, would be liable for the incident itself. It does allege that "[i]n Plaintiffs' information

---

[1] Although the alleged assault and battery would be intentional torts, the Petition pursues a negligence theory, alleging that the club was negligent in allowing Ramirez to be injured and asserting claims of negligent training, negligent supervision, negligent hiring, failure to warn, failure to provide "adequate safe security," failure to provide medical care, and vicarious liability.

3

and belief, Mr. Price was always A [sic] true owner, whether legally or equitably, of the real estate and improvements where the decedent sustained his mortal injuries, or he was to act as the owner on behalf of Thomas H. Sinclair, who became the authorized agent of Mr. Price and the other Defendants." Reading the Petition liberally, this appears to gesture at a vicarious liability theory with respect to the Price Defendants.

## B.    District Court Proceedings

In December 2011, Colony filed this suit in federal district court seeking a declaratory judgment that it has no duty to defend the Price Defendants in the Ramirez suit. The insurance policy that the Price Defendants rely on is Thomas Sinclair's commercial general liability policy for the Wispers Cabaret, effective from May 28, 2008, to May 28, 2009. The Policy's only named insured was Tommy Sinclair d/b/a Mustang Entertainment.[2] It also contained several additional-insureds provisions, one of which covered Thomas Sinclair's employees "for acts within the scope of their employment . . . or while performing duties related to the conduct of [Sinclair's] business."

Colony and the Price Defendants filed cross-motions for summary judgment. The Price Defendants asserted that, according to the Petition, they were "employees" of Sinclair and that the claims alleged against them were covered by the Policy. Colony disputed their insured status. Alternatively, it contended that the Policy did not extend to the state court claims because the Ramirez plaintiffs' injuries did not arise from "occurrences" within the meaning of the Policy and, even if they were occurrences, the Price Defendants' conduct was not covered under various policy exclusions. Thus, Colony disclaimed any duty to defend the Price Defendants.

---

[2] Thomas Sinclair, Thomas H. Sinclair, and Tommy Sinclair refer to the same person.

No. 14-10317

The district court granted Colony's motion, holding that the Price Defendants are not insureds because the Petition did not allege that they were employees of Sinclair.  As the Price Defendants were not insureds, the district court did not decide whether the claims alleged against them were covered by the Policy.  On appeal, both Colony and the Price Defendants continue to pursue all arguments they raised in the district court.

## II.    Analysis

### A.    Standard of Review

We review the district court's grant of summary judgment *de novo*.[3] "Summary judgment is appropriate when the evidence before the court shows that 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'"[4]  Under Texas law, an insurer's duty to defend is also a question of law that we review *de novo*.[5]

### B.    Applicable Law

In Texas, an insurer's duty to defend is governed by the eight-corners rule.  "[O]nly two documents are ordinarily relevant to the determination of the duty to defend: the policy and the pleadings of the third-party claimant."[6] "[T]he duty to defend arises only when the facts alleged in the complaint, if taken as true, would *potentially* state a cause of action falling within the terms of the policy."[7]  We consider the allegations in the underlying petition without

---

[3] *ACE Am. Ins. Co. v. Freeport Welding & Fabricating, Inc.*, 699 F.3d 832, 839 (5th Cir. 2012).

[4] *Id.* (quoting FED. R. CIV. P. 56(a)).

[5] *Ooida Risk Retention Grp., Inc. v. Williams*, 579 F.3d 469, 471–72 (5th Cir. 2009).

[6] *GuideOne Elite Ins. Co. v. Fielder Rd. Baptist Church*, 197 S.W.3d 305, 308 (Tex. 2006).

[7] *Northfield Ins. Co. v. Loving Home Care, Inc.*, 363 F.3d 523, 528 (5th Cir. 2004).

regard to their truth or falsity,[8] but we need defer only "to a complaint's characterization of *factual* allegations, not legal theories or conclusions."[9] And, "though [the court] liberally construe[s] the allegations in the petition in determining the duty to defend, resolving any doubt in favor of the insured, [it] will not read facts into the pleadings for that purpose."[10]

## C.   Analysis

The Policy insures Thomas Sinclair's "employees . . . for acts within the scope of their employment." Although the Petition is not entirely consistent or clear in its characterization of the relationship between the Price Defendants and Thomas Sinclair, it *never* alleges that they are his employees. Rather, to the extent that it suggests any employment relationship between them, it appears to allege that it was *Sinclair* who was the employee.[11]   Even construing the Petition liberally, we see nothing to support the Price Defendants' theory.

The Price Defendants urge the opposite conclusion based on their reading of two other statements in the Petition. The Petition makes the following statement in its "Facts" section: "While at the club, Mr. Ramirez was stopped from leaving the club by its employees and he was then falsely imprisoned in the club." Then, several pages later in the "Negligence" section,

---

[8] *GuideOne*, 197 S.W.3d at 308.

[9] *Evanston Ins. Co. v. Legacy of Life, Inc.*, 370 S.W.3d 377, 380 (Tex. 2012) (emphasis added); *see also Farmers Tex. Cnty. Mut. Ins. Co. v. Griffin*, 955 S.W.2d 81, 82 (Tex. 1997).

[10] *Trinity Universal Ins. Co. v. Cowan*, 945 S.W.2d 819, 825 (Tex. 1997) (citation omitted).

[11] The Petition states that MTP and TOM, "in the alternative, owned the Mustang property at the time of the Ramirez' [sic] killing and maintained a principal/agent, master/servant and/or *respondeat superior* relationship with Thomas Sinclair whereby Defendant Sinclair would operate and manage the Wispers Cabaret at the behest of land owners [MTP] and [TOM]." Furthermore, "[a]t all times material hereto, Thomas Sinclair was acting within *his* course and scope of agency and/or *employment* with these two Defendants."

after a long list of complaints against *all* "Defendants," the petition states: "In the alternative, Plaintiffs contend that Defendants falsely imprisoned Plaintiff against his will causing Plaintiff damages." The Price Defendants submit that "a fair reading and reasonable inference" of these statements is that "Defendants" and "employees" are synonymous for the purpose of the false imprisonment claim, and thus, the Price Defendants, as a subset of all "Defendants," are employees of Thomas Sinclair.

We cannot agree with this logic. Most obviously, the Price Defendants fail to explain how MTP and TOM, a partnership and a limited liability company, can be employees at all, let alone employees who falsely imprisoned Ramirez on October 1, 2008, particularly given that the Petition alleges that they were not formed until December 31 of the following year.[12] The Price Defendants also ignore the Petition's many other uses of "Defendants" and "employees" that make it obvious that these terms are not synonymous. The only plausible and internally consistent reading of the Petition is that the first statement was a factual allegation and the second was an assertion of vicarious liability. And, to the extent that a pleading must be read liberally in favor of insurance coverage, this liberal construction does not apply to legal conclusions: The second statement certainly is that.

A straightforward eight-corners analysis of the Petition reveals no allegations that would qualify the Price Defendants as additional insureds under the terms of the Policy. We therefore affirm the district court's grant of Colony's motion for summary judgment on this basis.

---

[12] If MTP and TOM are not employees, then "employees" and "Defendants" are not synonymous. In that case, there is nothing suggesting that Price was an employee, either.

7

### III.  Conclusion

Under the eight-corners rule, the Price Defendants are not additional insureds within the meaning of the Policy.  Thus, Colony has no duty to defend the Price Defendants in the Ramirez suit.  The district court's judgment is AFFIRMED.