GUIDEONE MUTUAL INSURANCE COMPANY, Plaintiff,

v.

GRACE CHRISTIAN CENTER OF KILLEEN, TEXAS, INC. d/b/a Grace Christian Center Church; Pamela Timmerman, individually and as the representative of the estate of Steven Timmerman, deceased; Laura Whitley Pitts; and Stephen Whitley, Defendants.

Case No. A–14–CA–455–SS

United States District Court, W.D. Texas, Austin Division.

Signed 08/18/2015

Lori Cole Magerko, GuideOne Insurance Legal Department, Des Moines, IA, R. Chad Geisler, Ryan C. Bueche, Germer Beaman & Brown PLLC, Austin, TX, for Plaintiff.

Patrick C. Canon, John Matthew Anthony, Anthony & Middlebrook P.C., Grapevine, TX, Brantley W. White, Sico, White, Hoelscher & Braugh, LLP, Corpus Christi, TX, Kirk L. Pittard, Peter Michael Kelly, Kelly, Durham & Pittard, LLP, Dallas, TX, Steven C. Laird, Wade Austin Barrow, Law Offices of Steven C. Laird PC, Fort Worth, TX, for Defendants.

## ORDER

SAM SPARKS, UNITED STATES DISTRICT JUDGE

BE IT REMEMBERED on this day the Court reviewed the file in the above-styled cause, and specifically Plaintiff GuideOne Mutual Insurance Company (GuideOne)'s Motion for Full and Final Summary Judgment [# 56], Defendant Grace Christian Center of Killeen, Texas, Inc. (Grace Christian)'s Response [# 57], Defendants Stephen Whitley and Laura Whitley Pitts (the Whitley Defendants)'s Response [# 61], GuideOne's Reply to Grace Christian's Response [# 64], GuideOne's Reply to the Whitley Defendants' Response [# 67], Grace Christian's Supplemental Brief [# 69], and GuideOne's Supplemental Brief [# 70]. Having considered the documents, the file as a whole, and the governing law, the Court enters the following opinion and orders DENYING the motion.

### Background

Plaintiff GuideOne filed this declaratory judgment action, seeking a declaration it does not have a duty to indemnify Defendant Grace Christian in an underlying lawsuit currently pending in Texas state court (the Underlying Suit). Grace Christian is a church located in Killeen, Texas, and was founded by pastors Terry Whitley (Mr. Whitley) and his wife, Janice Whitley (Mrs. Whitley), in 1980. The Underlying Suit arises out of a fatal car crash in which three pastors of Grace Christian—Mr. Whitley, Mrs. Whitley, and Steven Timmerman—were killed while riding in a van owned by Grace Christian. Mr. Whitley was employed by Grace Christian as the Senior Pastor at the time of the accident. Mrs. Whitley was employed by Grace Christian as the Church Administrator. Timmerman was employed by Grace Christian as the Senior Associate Pastor.

GuideOne issued a Business Auto Coverage insurance policy (No. 3797–910) to Grace Christian (the Policy). On March 2, 2013, the Policy became effective for a period of one year. Several months later, a pastor from Bulgaria invited the Whitleys to minister at a religious conference in Bulgaria, and the Whitleys agreed to at-

tend. On September 29, 2013, the Whitleys departed for Bulgaria, and Timmerman drove them to the Austin Bergstrom International Airport in a van owned by Grace Christian. The Whitleys returned on October 10, 2013, and Timmerman picked them up at the airport. While driving northbound on SH130, a tire on the van blew out, and the van rolled over numerous times. Timmerman was driving while the Whitleys were passengers, and all three suffered fatal injuries.

On March 7, 2014, Timmerman's wife, Pamela Timmerman (Mrs. Timmerman), filed the Underlying Lawsuit in the 53rd Judicial District Court of Travis County, Texas against Grace Christian and General Motors, LLC. *See* Mot. Summ. J. [# 56–4] Ex. D. Mrs. Timmerman alleges "Grace Christian by and through its employees and agents was negligent and failed to properly maintain, inspect, rotate and replace tires on the subject 2003 GMC 3500 15–passenger van ...." *Id.* ¶ 5.1.

On April 1, 2014, the Whitleys' two surviving children served a *Stowers* demand on GuideOne offering to settle their alleged claims against Grace Christian related to their parents' death, and on April 16, 2014, Grace Christian sent a letter to GuideOne demanding that GuideOne tender a payment under the Policy to settle the Whitley children's claims.

On May 3, 2014, GuideOne filed the instant declaratory judgment action, and on June 17, 2014, GuideOne filed its First Amended Complaint. The Policy provides the following relevant coverage:

## A. COVERAGE

We will pay all sums an **insured** legally must pay as damages because of **bodily injury** or **property damage** to which this insurance applies, caused by an **accident** and resulting from the ownership; maintenance or use of a covered **auto**.

We have the right and duty to defend any **suit** asking for these damages. However, we have no duty to defend suits for **bodily injury** or **property damage** not covered by this Coverage form.

Mot. Summ. J. [# 56–1] Ex. A (the Policy) at Section II (Liability Coverage), p. 2, ¶ A.

The Policy also provides the following relevant exclusion:

## B. EXCLUSIONS

This insurance does not apply to any of the following:

. . .

4. **EMPLOYEE INDEMNIFICATION AND EMPLOYER'S LIABILITY**

**Bodily Injury** to:

a. An employee of the **insured** arising out of and in the course of employment by the **insured;** or

. . .

This exclusion applies:

(1) Whether the **insured** may be liable as an employer or in any other capacity.

*Id.* at 3, ¶ B.

GuideOne has now moved for summary judgment, arguing (1) the Policy expressly excludes coverage for bodily injury to an employee of Grace Christian that arose out of and in the course of employment, and (2) the evidence establishes Grace Christian's employees at issue in the Underlying Suit suffered fatal injuries that arose out of and in the course of their employment with Grace Christian. As such, GuideOne contends it has no duty to defend or indemnify Grace Christian in the Underlying Suit.

Grace Christian responds first that the allegations in the Underlying Suit are suf-

ficient to raise the potential for coverage and therefore extrinsic evidence may not be reviewed in order to determine whether GuideOne has a duty to defend or indemnify. Second, even if the Court considered the extrinsic evidence, Grace Christian argues there are genuine issues of material fact concerning whether Timmerman and the Whitleys were acting in the course of their employment with Grace Christian at the time of the accident. Third, even if the Court determined GuideOne had no duty to defend, Grace Christian contends it would be premature to determine GuideOne does not have the duty to indemnify.

Defendants Stephen Whitley and Laurie Whitley Pitts (the Whitley Defendants) have also responded and incorporated by reference the arguments of Grace Christian. In addition, they argue a declaration with respect to them is premature because they have not filed suit against GuideOne's insured.

## Analysis

### I. Legal Standard—Summary Judgment

Summary judgment shall be rendered when the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–25, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Washburn v. Harvey,* 504 F.3d 505, 508 (5th Cir.2007). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). When ruling on a motion for summary judgment, the court is required to view all inferences drawn from the factual record in the light most favorable to the nonmov-

ing party. *Matsushita Elec. Indus. Co. v. Zenith Radio,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Washburn,* 504 F.3d at 508. Further, a court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 150, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000); *Anderson,* 477 U.S. at 254–55, 106 S.Ct. 2505.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue. *Matsushita,* 475 U.S. at 586, 106 S.Ct. 1348. Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Turner v. Baylor Richardson Med. Ctr.,* 476 F.3d 337, 343 (5th Cir.2007). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence. *Id.* The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his claim. *Adams v. Travelers Indem. Co. of Conn.,* 465 F.3d 156, 164 (5th Cir.2006). Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Id.* "Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment." *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. Disputed fact issues that are "irrelevant and unnecessary" will not be considered by a court in ruling on a summary judgment motion. *Id.* If the nonmoving party fails to make a showing sufficient to establish

the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322–23, 106 S.Ct. 2548.

## II. Application

### A. Eight–Corners Rule and Extrinsic Evidence

■■■ The parties first debate whether the Court may even consider extrinsic evidence in determining if GuideOne has a duty to defend. As a general rule, courts in Texas employ the so-called eight-corners rule in order to determine whether an insurer has a duty to defend its insured in the underling liability proceedings. *See, e.g., ACE Am. Ins. Co. v. Freeport Welding & Fabricating, Inc.*, 699 F.3d 832, 839–40 (5th Cir.2012). The eight-corners rule mandates the court may consider only two documents in determining whether an insurer has a duty to defend: the petition filed in the underlying lawsuit and the insurance policy at issue. *Id.* When reviewing these two documents, the court must assume the plaintiff's allegations in the pleadings are true and determine whether such facts fall within the scope of the insurance policy. *Id.* at 840. If the pleadings only allege facts excluded by the policy, there is no duty to defend. *Id.* Facts outside the pleadings, even those easily ascertained, are ordinarily not material to the determination, and allegations against the insured are liberally construed in favor of coverage. *GuideOne Elite Ins. Co. v. Fielder Rd. Baptist Church*, 197 S.W.3d 305, 308 (Tex.2006). The insurer has a duty to defend if the complaint against its insured alleges facts that, if true, are potentially within the policy's coverage. *Id.* at 310.

The Texas Supreme Court has discussed with approval a "very narrow exception, permitting the use of extrinsic evidence only when relevant to an independent and discrete coverage issue, not touching on the merits of the underlying third-party claim." *Id.* This exception applies " 'when it is initially impossible to discern whether coverage is potentially implicated *and* when the extrinsic evidence goes solely to a fundamental issue of coverage which does not overlap with the merits of or engage the truth or falsity of any facts alleged in the underlying case.' " *Id.* at 309 (quoting *Northfield Ins. Co. v. Loving Home Care, Inc.*, 363 F.3d 523, 531 (5th Cir.2004)).

Applying the eight-corners rule, Grace Christian compares the petition in the Underlying Suit to the Policy. The petition alleges Grace Christian, by and through its employees, was negligent and failed to properly maintain, inspect, rotate, and replace the tires on the van. The Policy provides coverage for damages "because of **bodily injury** or **property damage** ... caused by an accident and resulting from the ownership; maintenance or use of a covered **auto.**" Grace Christian's position is that these two provisions, when read together, indicate, at a minimum, a potential for coverage, and therefore the Court may not resort to extrinsic evidence. *See* Grace Christian's Resp. [# 57] at 8.

GuideOne, however, points out Grace Christian fails to go beyond the coverage provision and consider the applicability of the exclusion provision for bodily injuries to employees of the insured arising out of and in the course of employment by the insured. GuideOne argues that exclusion must be considered in determining whether GuideOne has a duty to defend, and the Court agrees. *See Star–Tex Res., L.L.C. v. Granite State Ins. Co.*, 553 Fed.Appx. 366, 371–72 (5th Cir.2014) (unpublished) ("[W]e have suggested that extrinsic evidence is more likely to be considered when an explicit policy coverage exclusion clause is at issue.") (internal quotation omitted

and citing examples). When considering the exclusion, it is not possible to determine from the petition in the Underlying Suit whether coverage is potentially implicated because it is not possible to discern whether Timmerman and the Whitleys suffered bodily injury arising out of and in the course of employment with Grace Christian. The petition does even mention the Whitleys, and the only allegation concerning Timmerman is that he was driving the van at the time of the accident. The petition contains no allegations relating to whether they were acting in the course and scope of their employment as the only allegation against Grace Christian is that it was negligent, by and through its employees, in maintaining the tires on the van. In other words, whether Timmerman and the Whitleys were acting in the course and scope of their employment "does not overlap with the merits of or engage the truth or falsity of" whether Grace Christian, by and through its employees, was negligent in maintaining the tires on the van. Therefore, the Court concludes it may go beyond the eight corners of the underlying petition and the Policy to consider extrinsic evidence in determining whether the exclusion applies.

## B. Course and Scope of Employment

As an initial matter, the question of whether the Whitleys were acting in the course and scope of their employment when they were riding home from the airport is a distinct question from whether Timmerman was acting in the course and scope of his employment by picking the Whitleys up from the airport. The Court separately considers the two questions. After reviewing the parties' briefing and their citations to the summary judgment record, the Court concludes the parties have presented competing evidence on a host of disputes, and as a result, there are numerous genuine issues of material fact.

The Court briefly overviews the summary judgment record.

### 1. The Whitleys

 Concerning the Whitleys, the central dispute is the nature of their trip to Bulgaria. In broad terms, GuideOne argues the Whitleys' trip to Bulgaria was made in their roles as pastors of Grace Christian and was a mission trip in furtherance of the church. As such, GuideOne argues the Whitleys made the trip in the course and scope of their employment. The defendants contend GuideOne fails to establish that conclusion as a matter of law and cites to evidence highlighting the personal aspects of the trip that had nothing to do with their work as employees of the church. At a minimum, the defendants argue, there are fact issues regarding whether the trip to Bulgaria was made in the course and scope of employment.

 Under Texas law, "the general rule is that an employee is not within the course and scope of his employment if he is traveling to or from work, absent other factors." *Askew v. Matthews*, No. 01–90–00488–CV, 1991 WL 188711, at *7 (Tex. App.–Houston [1st Dist.] Sept. 26, 1991, no writ). Those "'other factors' create exceptions to the general rule," and "[o]ne factor is that when transportation is furnished or paid for by the employer, it raises a rebuttable presumption that the employee was in the course and scope of employment at the time of the accident." *Id.* The parties agree this rebuttable presumption applies. *See* Grace Christian's Resp. [# 57] at 11. As such, the burden shifts to the defendants in this case to present evidence the Whitleys were not acting within the course and scope of employment.

As evidence, the defendants rely on the deposition testimony of Jackie Wilmot, the Church's current Executive Director of Business Operations and who served as

Grace Christian's Finance and Personnel Director at the time of the accident. *See* Whitley Defs.' Resp. [# 61–1] Ex. A (Wilmot Dep.). Wilmot testified the Whitleys' trip to Bulgaria was more personal in nature rather than business, and they had attended the conference to develop their friendship with the Bulgarian pastor who had invited them. *Id.* at 18–19, 28–32. Wilmot considered at least a portion of the trip to be vacation time for the Whitleys because while they spent some of the trip in Bulgaria attending and participating in the religious conference, they also spent a portion of the trip in Greece for personal enjoyment. *Id.* at 18–19, 21, 30. Wilmot also testified that, according to the conference's agenda sent to her by the Bulgarian pastor, Mr. and Mrs. Whitley were each scheduled only to speak once at the conference which lasted only two-to-three days, yet their trip in total lasted twelve days. *Id.* at 82–83, 139. Wilmot disputed any notion this was a mission trip because the church's mission work focused on China and Ethiopia, not Bulgaria. *Id.* at 20. Wilmot testified the Whitleys often mixed vacation time in with work trips, making it difficult to distinguish between the two. *Id.* at 20, 67.

Opposing this evidence, GuideOne presents substantial evidence supporting the business aspects of the trip. As explained by Wilmot, Grace Christian always funded the trips the Whitleys took on behalf of Grace Christian, and Wilmot made the travel arrangements for these trips, including the Whitleys' trip to Bulgaria. *Id.* at 86–87. More specifically, Wilmot scheduled the flights and reserved the hotel for the Whitleys' trip to Bulgaria, and Grace Christian paid for all known expenses for the Whitleys' trip to Bulgaria, which totaled at least $14,000. *Id.* at 97, 102, 107. Wilmot testified that Grace Christian did not pay for expenses related to employee's personal vacations, and on the one previous occasion during Wilmot's tenure

(which began in 2011) where the Whitleys took what was purely a vacation to Cabo San Lucas, Grace Christian did not pay for the trip. *Id.* at 100–101, 171–72. GuideOne has documented in detail the expenses of the trip to Bulgaria and Greece and how Grace Christian covered all of them. *See* Mot. Summ. J. [# 56] at 13–14 (citing evidence in the record). Moreover, it is undisputed the Whitleys went to Bulgaria to attend a religious conference and to give speeches at the conference in their capacities as ministers. International travel in order to attend conferences is included as part of both of the Whitleys' job descriptions, and the church's employee handbook contemplated such trips. *Id.* at 12.

In the Court's view, the competing evidence outlined above reveals a number of fact issues regarding whether the Whitleys' trip to Bulgaria and Greece was a business trip, a personal vacation, or some combination of both. Put differently, the Court cannot say as a matter of law the Whitleys were acting in the course and scope of their employment at the time of the accident.

### 2. Timmerman

■ Concerning Timmerman, the central dispute is whether he transported the Whitleys to and from the airport as part of his job duties with Grace Christian or as a personal favor to friends. GuideOne contends Timmerman drove a church van to pick up the Whitleys from a church-related business trip, a task he performed regularly when the Whitleys went on their various mission trips around the world. The defendants dispute that characterization and argue Timmerman, as the Senior Associate Pastor and third-in-charge at the church, did not have to run personal errands for the Whitleys as part of his job requirements for the church. Instead, they argue, he volunteered to drive them as their friend.

Before assessing the record, the Court notes the same rebuttable presumption described above in the context of the Whitleys also applies to Timmerman because he was driving a van owned by his employer. As such, the defendants must present evidence indicating Timmerman was not acting in the course and scope of his employment. In support of this conclusion, the defendants again rely on the testimony of Wilmot who said she actually first volunteered to drive the Whitleys before Timmerman. Wilmot Dep. at 33–34. Wilmot testified that Timmerman was not required to take the Whiltleys to and from the airport by anyone at the church, including the Whitleys, and there is no evidence in the record to the contrary. *Id.* The defendants emphasize the Whitleys' trip was a personal one, and Timmerman was driving them to and from the airport as a favor to friends, evidenced by the fact that Timmerman picked them up after normal business hours. *Id.* at 172, 70. According to Wilmot, the reason they used the church van, instead of the Whitleys' personal car, was that Mrs. Whitley carried a substantial amount of luggage that would not fit into their personal vehicle. *Id.* at 25, 55, 156. Moreover, prior to picking the Whitleys up at the airport, Timmerman went to pick up the Whitleys' dogs at the kennel where they had been boarded during the Whitleys' trip abroad. *Id.* at 28. Wilmot further testified to the kind of person Timmerman was, a kind and generous man who often performed personal favors for members of the church community, including his coworkers. *Id.* at 41–42.

GuideOne disputes this record by emphasizing Timmerman's subordinate position to the Whitleys and the fact his written job description required him to perform all duties assigned to him by the Senior Pastor, Mr. Whitley. *See* Mot. Summ. J. [# 56–17] Ex. Q. GuideOne highlights the facts Timmerman drove a van owned by the church, and church policy was that the van was only to be used for church business. *See* Wilmot Dep. at 78. Moreover, all costs of the trip were paid for by the church including gas and tolls. *See* Mot. Summ. J. [# 56] at 11 (citing record evidence). GuideOne points out there is no evidence in the record Timmerman used personal or vacation time when he drove to and from the airport. *Id.* at 15–16.

As with the record on the Whitleys, the Court concludes the summary judgment evidence concerning Timmerman demonstrates a number of disputed facts, and the Court declines to rule as a matter of law that Timmerman was acting in the course and scope of his employment.

### 3. Summary

The Court has merely offered an overview of the record on summary judgment and the genuine issues of material fact contained therein. The parties have delved into much more detail in their briefs, and their evidence and argument is better reserved for a jury. In addition, the parties briefed some evidentiary disputes, including, in particular, the admissibility of a transcript of a phone conversation between a GuideOne representative and Grace Christian employee, Jim Reed. Resolution of these evidentiary disputes— one way or the other—would not alter the Court's conclusion that summary judgment is inappropriate, and therefore the Court defers ruling on the parties' respective evidentiary objections. They may renew any objections at a later time when appropriate.

### Conclusion

After reviewing the parties' arguments and the current record, the Court cannot rule as a matter of law that the Whitleys and Timmerman were acting in the course and scope of employment at the time of the accident that took their lives. There-

fore, the Court cannot rule as a matter of law that the relevant exclusion in the Policy applies and that GuideOne has no duty to defend.

Accordingly,

IT IS ORDERED that Plaintiff GuideOne Mutual Insurance Company's Motion for Full and Final Summary Judgment [# 56] is DENIED.